# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARIO SOLARES,** <br> Plaintiff, <br> vs. <br> **SHAWN HATTON,** <br> Defendant. | CASE NO. 17-cv-01262-YGR <br><br> **ORDER DENYING PETITION FOR HABEAS CORPUS RELIEF** |

Now before the Court is petitioner Mario Solares's petition for a writ of habeas corpus. (Dkt. No. 1 ("Petition").) The government answered (Dkt. No. 9 ("Answer")) and petitioner filed a traverse in reply (Dkt. No. 16 ("Traverse")). Petitioner raises one ground for relief, claiming that his counsel rendered ineffective assistance. Specifically, petitioner claims that his counsel improperly coerced him to accept a guilty plea because she had acted on the improper belief that petitioner was guilty and, therefore, failed to subject the government's case to meaningful scrutiny. (*See* Petition at m-4.) Based thereon, petitioner seeks a writ of habeas corpus. Having carefully considered the petition and the papers submitted, and for the reasons stated below, the Court **DENIED** the petition for such relief.

**I.  BACKGROUND**

**A. Procedural Background**

On January 18, 2013, the Contra Costa County District Attorney filed an information in Superior Court accusing petitioner of one count of a forcible lewd act upon a child under age fourteen, Cal. Pen. Code Section 288(b)(1), and of six counts (counts 2 through 7) of lewd acts upon a child under age fourteen, Section 288(a), with allegations that there were multiple victims,

1  Section 667.61. (Dkt. No. 11 ("Record"), Ex. B at 33-45.)[1] Petitioner entered a plea of guilty to counts 3 and 4, and, on August 23, 2013, the court sentenced him to a term of ten years. (*Id.* at 30-31.)

On August 22, 2014, petitioner filed a petition for writ of habeas corpus in the Superior Court of the State of California, County of Contra Costa, arguing that he received ineffective assistance of counsel during the plea-bargaining stage of his criminal prosecution (*See id.* at 6-24), which the court denied on January 22, 2015 in a written decision. (Record, Ex. A at 31-33.) On March 23, 2015, petitioner filed an original petition for writ of habeas corpus on the same grounds in the Court of Appeal of the State of California, First Appellate District. (*Id.* at 3-29.) The Court of Appeal denied the petition on June 25, 2015. (Record, Ex. E.) Thereafter, on July 7, 2015, petitioner filed a petition for review with the California Supreme Court. (Record, Ex. F.) On August 26, 2015, the California Supreme Court granted the petition for review and transferred the case to the Court of Appeal with instruction to issue an order to show cause returnable in the Superior Court as to "why petitioner is not entitled to relief based on ineffective assistance of trial counsel for improperly coercing petitioner into accepting the plea agreement[.]" (Record, Ex. G.)

On August 28, 2015, the Court of Appeal issued the order to show cause, returnable to the Superior Court. (Record, Ex. H.) Following briefing (Record, Ex. I at 30-44, 62-69), and evidentiary hearings on February 26, 2016 and June 17, 2016, as well as argument on June 24, 2016, the Superior Court denied the petition in a written decision on August 27, 2016. (*Id.* at 71-82.) On October 24, 2016, petitioner filed another petition for writ of habeas corpus in the Court of Appeal, First Appellate District (*Id.* at 3-28; *see also* Record, Ex. J), as to which the Court of Appeal requested and received briefing. (Record, Exs. K, L, M.) The Court of Appeal denied the petition on December 22, 2016. (Record, Ex. N.) On December 30, 2016, petitioner filed a petition for review with the California Supreme Court (Record, Ex. O), which the court denied on February 15, 2017. (Record, Ex. P.)

On March 9, 2017, petitioner filed a petition for writ of habeas corpus in this Court.

---

[1] Page citations to the record refer to ECF pagination.

1  (Petition.) On November 4, 2017, the Court issued an order to show cause directing the

2  respondent to file an answer as to why a writ of habeas corpus should not be issued. (Dkt. No. 4.)

3  Respondent so filed on April 26, 2018 (Answer), and petitioner subsequently filed a traverse in

4  support of his petition on July 25, 2018. (Traverse.) The last reasoned state court decision in this

5  case is the California Superior Court unpublished decision issued on August 27, 2016. *In re

6  Mario Solares*, No. 5-141840-9 (Cal. Super. Ct. [Contra Costa] Aug. 27, 2016) (unpublished

7  opinion) (Record, Ex. I at 71-82).

### B. Factual Background

The Court adopts as its account of the facts the summary set forth in the last reasoned opinion in this matter, the California Superior Court unpublished decision issued on August 27, 2016.[2] This summary is presumed correct. *See Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

> The Court credits the testimony of attorney Roberta Brooks and private investigator Ronald Parker.
> Brooks has been practicing exclusively criminal defense for sixteen years. She has represented hundreds of criminal defendants, many of whom were charged with sexual assault crimes. She has tried eighteen or nineteen cases, including four or five felonies. Before this case, Brooks had tried one sexual assault case to verdict. In 2010, two daughters of Petitioner's significant other, Jane Doe 1 and Jane Doe 2, alleged that Petition had molested them. Jane Doe 1 and Jane Doe 2 were interviewed by Child Protective Services (CPS) and gave detailed accounts of Petitioner having touched their breasts and vaginas. As a result of the referral to CPS, Petitioner hired attorney Roberta Brooks to represent him. Brooks prevented law enforcement officers from interviewing Petitioner. Petitioner has at all times denied the allegations of molestation. Brooks advised Petitioner to take a polygraph exam so she could use any favorable results to urge the District Attorney to refrain from filing charges against Petitioner. In a prior similar child molestation case, Brooks had succeeded in having charges dismissed when she was able to present positive polygraph results to the District Attorney and make her client available to the DA for their own polygraph examination. Petitioner took the polygraph examination, but the results were inconclusive.
> In 2011, the People filed a Complaint against Petitioner charging him with approximately eight counts of child molestation. Brooks was retained to represent Petitioner on the criminal case. The theory of the defense, suggested by the Petitioner, was that Jane Doe 1 and Jane Doe 2 were coerced by their older

---

[2] *In re Mario Solares*, No. 5-141840-9 (Cal. Super. Ct. [Contra Costa] Aug. 27, 2016) (unpublished opinion) (Record, Ex. I at 71-82.)

3

sister's husband David, to falsely accuse Petitioner of child molestation. Brooks received and reviewed the police reports in discovery on approximately November 15, 2011. She sent a formal discovery request to the District Attorney (DA) on March 23, 2012. Brooks received and reviewed the videotaped interviews of Jane Doe 1 and Jane Doe 2 conducted at the Children's Interview Center (CIC) shortly after the allegations arose. She had these interviews transcribed. In the CIC interviews, the victims gave detailed statements describing Petitioner's acts of molestation.

Brooks had regular telephonic or personal contacts with Petitioner throughout the pendency of this case. He called her frequently and often dropped by her office. Petitioner was free on bond until the day he was sentenced.

In May 2012, B[r]ooks hired Joe Lopez, a private investigator, to interview the alleged victims in this case. Lopez interviewed Jane Doe 1 and Jane Doe 2 and obtained statements recanting their allegations against Petitioner. In September 2012, Brooks retained Ronald Parker, another private investigator, to obtain more detailed statements from all of the witnesses. Brooks had worked with Parker on child molestation cases in the past and knew he would obtain more thorough statements from Jane Does 1 and 2. She instructed Parker to interview everyone named in the police reports and anyone else Petitioner could suggest. Parker interviewed, among others, Jane Doe 1 and Jane Doe 2 on videotape and obtained detailed statements. Parker wrote reports summarizing his interviews and described them to Brooks as favorable to the defense. In August 2012, Brooks filed a petition to obtain the Child Protective Services files relating to the investigation of Jane Doe 1 and Jane Doe 2's allegations against Petitioner.

The Preliminary Hearing began on September 24, 2012, and continued over several days until January 4, 2013, when petitioner was held to answer to the charges on the Complaint. The Complaint charged eight counts, but did not allege a potential enhancement that carried a sentence of 15 years to life in prison. Brooks knew, from her experience representing defendants on similar cases, that the District Attorney would likely add such an enhancement to the information to be filed after the Preliminary Hearing. Brooks discussed this likelihood with Petitioner before the Preliminary Hearing. Brooks did not seek a pre-Preliminary Hearing offer from the District Attorney because Petitioner claimed he was innocent and did not want an offer from the District Attorney. Brooks believed Petitioner's claim of innocence. The Information filed against Petitioner contained the original charges from the Complaint, plus the enhancement. In total, Petitioner was facing a potential sentence of 28 years to life in prison. Brooks explained this to Petitioner.[3] Brooks also advised Petitioner that any molestation convictions would result in a requirement that he register as a sex offender for life. On February 26, 2013, Petitioner's trial was set for July 29, 2013.

Although Petitioner maintained his innocence, he became more interested in obtaining a plea agreement offer from the District Attorney as the trial approached.

Brooks hired Dr. Ann Weisburg and Dr. Alex Smith from A Step

---

[3] The Court discredits Petitioner's claim that Brooks told him he was facing 25 to 100 years in prison.

4

Forward, a sexual offender treatment program, to review the CIC interviews of Jane Doe 1 and Jane Doe 2 to evaluate whether the interviewer had followed the correct protocol in interviewing victims of child molestation. Theses doctors concluded that the CIC interviews were performed correctly in accordance with the protocol and that there were no inappropriate leading or suggestive questions asked of the victims. During the CIC interviews, one of the victims corrected the interviewer when she made a factual mistake, indicating that the child's relationship with the interviewer was strong enough to enable the child to correct any mistakes. Brooks recognized that this enhanced the reliability of the CIC interviews.

As noted, Brooks also sought an order pursuant to Welfare and Institutions Code section 827 to receive access to the confidential Children Protective Services file. She was hoping to find evidence with which she could impeach Jane Doe 1 and Jane Doe 2 at trial. The request was granted and Brooks received the CPS file. From her review of the file, Brooks learned that Jane Doe 1 and Jane Doe 2 had made very detailed statements describing Petitioner's having touched their vaginas and chests. These statements were made before the police interviewed the victims and were consistent with the statements they subsequently gave to the police.

More troubling to Brooks, the CPS file also included a statement form Nora, the older sister of Jane Does 1 and 2, who was applying to be their guardian. Petitioner had represented to Brooks that Nora would be a favorable defense witness. Nora volunteered to CPS and she (Nora) had been molested by her biological father (who was not Petitioner) and had told her mother (who was also the mother of Jane Doe 1 and Jane Doe 2), but her mother ignored her. Jane Doe 1 and Jane Doe 2 had told their brother Carlos that Petitioner was molesting them. Carlos told Nora. When Nora learned that Jane Doe 1 and Jane Doe 2 were being molested by Petitioner, she grew concerned that their mother would ignore them as well, so she took steps to protect Jane Doe 1 and Jane Doe 2 from Petitioner. Nora took them to see Maria, the oldest sister of Jane Doe 1 and Jane Doe 2 (and Nora), who spoke to the victims with her husband David. Brooks found this information very troublesome to the defense because she could not explain – given the proposed defense that David had forced Jane Doe 1 and Jane Doe 2 to claim falsely that they were molested by Petitioner – why Nora would be motivated to protect the girls before she brought them to see Maria and David. In short, there was a significant hole in the defense theory: if David had planted the molestation allegation how is that Nora heard the allegations before David spoke to the girls? Brooks shared her concern over this flaw in the defense theory with Petitioner.

In May 2013, Brooks arranged for a Penal Code Section 288.1 examination of Petitioner in an effort to obtain evidence that he had no propensity to molest children. She hoped to use this report to seek a favorable plea offer from the District Attorney or to use as evidence of Petitioner's innocence at trial. Petitioner's readiness conference was initially scheduled for July 17, 2013, Brooks continued the readiness conference to July 24 so she could obtain the PC 288.1 report and use it in plea negotiations. On or around July 17, Brooks received an email copy of Dr. Mataraso's PC 288.1 report. To her dismay, the study found that Petitioner exhibited sexual attraction to girls aged 14 and 17. In Brooks's opinion, this finding eliminated any favorable impact the report would

5

have on the District Attorney or at trial, so she never disclosed the report to the DA.

Petitioner asked Brooks if she needed assistance on his case and if he should hire an additional attorney. Brooks responded that she was fully prepared to handle his case and explained that she had discussed Petitioner's case with two more experienced defense attorneys, Linda Fullerton and Jane Elliot. Fullerton specifically advised that the PC 288.1 was not good news for the defense. Brooks had also discussed the case extensively with Elliot.

Brooks began her intensive trial preparations. She prepared a jury questionnaire, and began planning her voir dire of jurors, her cross-examination of the People's witnesses, and her closing argument. She had already done all of the legal research on the case before the preliminary hearing.

As she prepared for trial, Brooks watched the videotaped interviews of Jane Doe 1 and Jane Doe 2 conducted by Ron Parker. She found the interviews much less helpful than Parker had described. When the girls had trouble answering his questions, Parker would suggest answers favorable to the defense. Even then, both girls described how Petitioner had accidentally touched their breasts, buttocks, and vaginas. Brooks believed that jurors, particularly women, would find it difficult to believe that Petitioner had accidently touched the girls' vaginas. Finally, neither Jane Doe 1 nor Jane Doe 2 mentioned David in their statements, suggesting that he had not been the source of their allegations.

Seeking some leverage to encourage the District Attorney to make a plea agreement offer favorable to Petitioner, Brooks convinced Petitioner to take another polygraph test. On July 19, 2013, Petitioner took a polygraph test on the issue of whether he had in fact molested the alleged victims. Petitioner failed the second polygraph examination, leaving Brooks with nothing to take to the District Attorney.

On July 22, 2014, Brooks met with a supervising Deputy District Attorney to discuss a plea offer. Brooks requested a three-year offer; the District Attorney would not agree to a plea offer of less than ten years in state prison. Immediately after meeting with the District Attorney, Brooks met with Petitioner and communicated the offer to him. Brooks recommended that he take the offer because she believed their defense was vulnerable. Brooks explained to Petitioner that every effort she made to punch holes in the People's case or to strengthen the defense case had come out badly: (1) The defense theory that David had planted the molestation ideas in the victims' heads could not be reconciled with Nora's expressed concern over the allegations before the victims spoke to David; (2) the PC 288.1 report disclosed evidence that Petitioner was attracted to underage girls; (3) the CIC interviews were properly conducted and not subject to attack; (4) Parker's interviews were leading, suggestive, and vulnerable to attack, and the victims still described multiple cases of unlikely accidental touching; and (5) Petitioner had failed the polygraph designed to bolster his claim of innocence.

Brooks accurately advised Petitioner that he was facing a potential sentence of 28 years to life after a trial and that the District Attorney's plea offer was ten years in state prison. She gave Petitioner her advice that he would be best off accepting the plea offer. Brooks left the decision entirely to Petitioner. She was prepared and willing to go to trial. In fact, it would have been in her financial interest to try the case. She testified credibly, however, that she gave Petitioner the choice whether to go to trial or not. She recognized that it was Petitioner's

6

life at stake; he would do the time, not Brooks. After a fairly long discussion on July 22, Petitioner concluded that he did not like the offer, but that he would accept the plea offer.

Between this meeting on July 22 and the readiness conference date of July 24, 2013, Petitioner never expressed to Brooks that he wanted additional time to consider the plea offer. Brooks never told Petitioner that he could not fire her or that he could not hire another attorney. Petitioner did consult with three other attorneys, one (unnamed in the testimony) from San Francisco, one from the Hayward area, and local attorney Joseph Tully. The first two attorneys called Brooks and requested that she fax them the police reports. Brooks did so. She discussed the cases with each of these lawyers in turn, and each declined to take the case.

Between July 22 and July 24, 2013, Petitioner called Parker and asked Parker whether he should take the plea offer. Parker responded that he should discuss that issue with Brooks. Petitioner expressed concern about both the prospect of receiving a life sentence after trial and pleading to a ten-year sentence. Parker suggested Petitioner get a second opinion from Tully. Tully discussed the case with Parker, but not with Brooks. Tully was never retained.

At the July 24, 2013 readiness conference, Petitioner pleaded guilty to two counts. Petitioner filled out a plea form asserting that he wanted to change his plea and entered his pleas of guilty pursuant to the plea agreement. Petitioner did not have questions about the plea or express to Brooks or to the Court any reluctance to enter his plea, other than his view that the plea offer was higher than he wanted. Petitioner's family was in the courtroom as he entered his guilty pleas. Judge Maier found that the Petitioner had knowingly, voluntarily and intelligently waived his right to a trial and entered his guilty pleas.

Brooks had negotiated a sentencing date 30 days after Petitioner pleaded guilty so he could get his affairs in order. During those thirty days, Petitioner never expressed to Brooks a desire to withdraw his guilty pleas. At his sentencing hearing, Petitioner made no mention of a desire to withdraw his plea. Petitioner was sentencing in accordance with the negotiated disposition.

Brooks did not tell Petitioner that the children would be taken away from their mother if Petitioner went to trial. She never told the defendant that he had to plead guilty or that he had no choice. Brooks had no plans to leave on vacation to England or anywhere else. She had cleared her calendar to try Petitioner's case.

*In re Mario Solares*, No. 5-141840-9, at *2-10 (Record, Ex. I at 72-80).

## II.    LEGAL STANDARD

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

7

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *see Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the United States Supreme Court which existed at the time the petitioner's state court conviction became final. *Williams (Terry)*, 529 U.S. at 412. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405-406. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Further, even if a constitutional error is found, habeas relief may only be granted if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry*

*v. Johnson*, 532 U.S. 782, 784 (2001) (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Thus, in order to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id*.

In applying the above standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Specifically, when there is no reasoned opinion from the highest state court that considered the petitioner's claims, the court looks to the last reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Thus, a federal court will "look through" the unexplained orders of the state courts rejecting a petitioner's claims and analyze whether the last reasoned opinion of the state court unreasonably applied Supreme Court precedent. *See Ylst*, 501 U.S. at 804-06; *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). As noted above, the last reasoned state court decision in this case is the California Superior Court unpublished decision issued on August 27, 2016. *In re Mario Solares*, No. 5-141840-9 (Cal. Super. Ct. [Contra Costa] Aug. 27, 2016) (unpublished opinion) (Record, Ex. I at 71-82).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

#### A. State Court Opinion

In rejecting petitioner's claim of ineffective assistance related to his counsel's performance during the plea-bargaining stage of his criminal prosecution, the California Superior Court explained:

> Petitioner alleges that trial counsel was ineffective because she improperly coerced Petitioner into accepting the plea agreement.
> To prevail on an ineffective assistance of counsel claim, Appellant must show: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice, *i.e.*, that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 691-94.) "A reasonable probability is a probability sufficient to

9

> undermine confidence in the outcome." (*People v. Brolin* (1998) 18 Cal. 4th 297, 333.)
>
> The Sixth Amendment right to effective assistance of counsel applies to the plea-bargaining process. *Lafler v. Cooper* (2012) 132 S. Ct. 1376, 1384; *Hill v. Lockhart* (1985) 474 U.S. 52, 57; *In re Alvernaz* (1992) 2 Cal. 4th 924, 933-34, 936.
>
> The Court concludes, based on the findings above, that defense counsel Roberta Brooks did not coerce Petitioner into accepting the plea agreement offered by the People in this case. Brooks was at all times prepared and willing to try this case if Petitioner so elected. She investigated the case thoroughly, took many steps reasonably calculated to assist in the defense, and consulted with Petitioner throughout the process. When Petitioner expressed an interest in pursuing a plea offer from the District Attorney, Brooks met with the District Attorney and argued as well as she could, given the state of the evidence. She communicated the District Attorney's plea offer to Petitioner and left it for him to decide whether to accept the offer. Brooks told Petitioner the decision was his and she would try the case if he so chose.
>
> Petitioner was not happy with the offer, but ultimately decided to accept it. Petitioner entered his guilty pleas with no suggestion that they were coerced or involuntary. Judge Maier found that Petitioner had entered his guilty pleas freely and voluntarily. On the day he was sentenced, Petitioner said nothing about a coerced plea.
>
> Petitioner's claims that Brooks told him he was facing a sentence of 25 to 100 years in prison and that she told him he was not permitted to fire her and seek new counsel are simply not credible. Moreover, the former, even if true, would not warrant habeas relief; a sentence of 25 to 100 years in prison is arguably less than the true sentence of 28 years to life in prison that Petitioner faced if he was convicted at trial. It is not reasonably probable that Petitioner would have elected to go to trial had he known he was facing 28 years to life in prison rather than 25 to 100 years in prison. As to the second claim, Petitioner did in fact consult with three attorneys before he decided to plead guilty. That fact belies his claim that he was told – and believed – that he was precluded from hiring other counsel.

*In re Mario Solares*, No. 5-141840-9, at *10-12 (Record, Ex. I at 80-82).

### B. Applicable Federal Law

A claim of ineffective assistance of counsel ("IAC") is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish a claim of IAC, petitioner must show both that: (i) his counsel performed deficiently and (ii) the deficient performance in fact prejudiced his defense. *Id.* at 687–88. A reviewing court should deny an IAC claim if the petitioner cannot adequately demonstrate either of the *Strickland* prongs. *Id.* at 697 (noting that courts are not required to address both prongs of the test if the petitioner

10

1 fails on one).

2 In establishing the first prong of *Strickland*, petitioner must show that his counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under predominant professional norms. *Id.* at 687–88. The reviewing court should treat counsel's conduct with a strong presumption that the conduct is within the realm of reasonable professional assistance. *See id.* at 689. In order to establish the second prong, petitioner must show counsel's deficient performance prejudiced him, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Petitioner must establish that counsel's errors were so severe as to dispossess the petitioner of a fair trial and reliable verdict. *Id.* at 692. When a petitioner is challenging a conviction, the pertinent question is "'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014) (quoting *Strickland*, 466 U.S. at 694).

The decision whether or not to accept a plea offer is a critical stage of the prosecution at which the Sixth Amendment right to counsel attaches. *Turner v. Calderon*, 281 F.3d 851, 879 (9th Cir. 2002). Therefore, the two-part test of *Strickland* applies to counsel's ineffective assistance in advising a defendant to accept or reject a plea offer. *See Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985); *Nunes v. Mueller*, 350 F.3d 1045, 1051-53 (9th Cir. 2003) (rejecting attempt to limit *Hill* to acceptance of plea offer). In light of the complexity and uncertainties that attend plea bargaining, it is especially essential that the habeas court respect the latitude for counsel's judgment that *Strickland* requires. *See Premo v. Moore*, 131 S. Ct. 733, 741 (2011) (holding that 9th Circuit erred in concluding trial counsel engaged in deficient performance by not moving to exclude a confession before advising client to take a plea bargain early in the proceedings).

With respect to review of a state court's *Strickland* decision on a habeas petition, the Supreme Court has held that

> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a

*Strickland* claim on direct review of a criminal conviction in a United States district court.

*Harrington*, 562 U.S. at 101. Thus, when section 2254(d) applies, "the question is not whether counsel's actions were reasonable[;] . . . [t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105; *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted).[4]

### C. Analysis

Petitioner has failed to demonstrate that the Superior Court's decision was contrary to or constituted an unreasonable application of *Strickland*.[5] The *Strickland* framework for analyzing IAC claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). A "'doubly' deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254." *Id.* at 190. *Strickland* requires that the state court review a defense counsel's effectiveness with great deference, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541

---

[4] Because the *Strickland* prejudice examination is comprehensive in itself, there is no need for a habeas court to employ the harmless error review under *Brecht*. *Brecht*, 507 U.S. at 637; *see also Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).

[5] Petitioner's argument that his counsel's conduct during the plea-bargaining stage of his criminal prosecution constituted such an utter failure resulting in egregious prejudice and, therefore, implicates the presumption of prejudice under *United States v. Cronic*, fails. (*See* Petition at m-4 (citing 466 U.S. 648, 659 (1984)).) The Ninth Circuit has reserved the *Cronic* presumption of prejudice for those rare cases where counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659; *see e.g., United States v. Swanson*, 943 F.2d 1070, 1074 (9th Cir. 1991) (presuming prejudice where counsel conceded in argument to jury that there was no reasonable doubt regarding factual issue in dispute). Here, prior to and during the negotiation of petitioner's plea, counsel investigated the case, prepared for trial, and consulted with petitioner regularly. Accordingly, her conduct does not, and cannot, constitute a "complete" failure. *See Bell v. Cone*, 535 U.S. 685, 696-97 (2002); *Visciotti v. Woodford*, 288 F.3d 1097, 1106 (9th Cir. 2002) (declining to presume prejudice where counsel put on a defense mental health expert, objected to some evidence and cross-examined the prosecution's witness, even though he failed to investigate and prepare for trial adequately and had a limited range of defense arguments), *rev'd on other grounds*, 537 U.S. 19 (2002).

12

U.S. 652, 664 (2004)).

The first *Strickland* prong requires the petitioner to establish that counsel's advice was deficient, meaning it was not "'within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Here, the evidence demonstrates that petitioner's counsel hired an investigator to work on the case and develop evidence for trial, twice had petitioner take a polygraph examination, hired experts to the view the victim interviews, had petitioner examined by a propensity expert, personally prepared for trial, obtained advice from more experienced attorneys, spoke with other attorneys a petitioner's request, and advised petitioner that he faced a punishment of 25 years to life in prison if he went to trial and a jury found him guilty. *In re Mario Solares*, No. 5-141840-9, at * 2-10 (Record, Ex. I at 72-80). Given the substantial effort undertaken by Brooks in preparing to try petitioner's case and negotiating with the District Attorney, petitioner's allegation that Brooks failed to subject the prosecution's case to meaningful scrutiny fails to overcome the presumption that counsel's performance was sufficient. *Burt v. Titlow*, 134 S. Ct 10, 17 (2013) (concluding that without any evidence demonstrating that counsel gave inadequate advice regarding withdrawal of a guilty plea, there is strong presumption that counsel's performance was not deficient).

The evidence also shows that in advising petitioner to accept the plea offer, Brooks explained that her efforts to attack the prosecution's case had not worked, told him of the potential sentence he faced, and gave him the choice of whether to go to trial or accept the plea. *In re Mario Solares*, No. 5-141840-9, at *8-9 (Record, Ex. I at 78-79). In doing so, she provided petitioner "with the tools he nee[ded] to make an intelligent decision." *Turner*, 281 F.3d at 881 (concluding counsel who advised defendant to reject offer of 15-years-to-life was not deficient where evidence showed that petitioner informed of potential death penalty at trial, and counsel had allowed petitioner to think about offer overnight). Moreover, and as noted by the Superior Court, petitioner's claims that Brooks told him, and that he believed, that he could not fire her and hire other counsel is "beli[ed]" by the fact that prior to pleading guilty, petitioner consulted with three

13

attorneys, two of which with whom Brooks spoke and to whom she sent key documents.[6] *In re Mario Solares*, No. 5-141840-9, at *9 (Record, Ex. I at 79). Based on these determinations, the state court concluded that Brooks did not coerce petition into accepting the plea agreement offered by the District Attorney. *Id.* at * 10-12 (Record, Ex. I at 80-82.) Accordingly, the Superior Court's determination that Brooks's conduct did not fall below an objective standard of reasonableness was, itself, a reasonable application of the standard articulated in *Strickland*.

Even if petitioner could have satisfied the first prong, he cannot satisfy the second. To satisfy the second *Strickland* prong and establish prejudice from counsel's advice to accept a plea offer, petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 57-59. Here, the Court must give the deference owed in light of the uncertainty inherent in plea negotiations and finds that petitioner cannot satisfy the prejudice prong by showing a reasonable possibility that he might have obtained a better plea agreement but for counsel's errors. *See Premo*, 131 S. Ct. at 743-45.

As set forth above, the state court determined that Brooks engaged in substantial investigation of the prosecution's case, prepared intensively for trial, negotiated a plea agreement on petitioner's behalf, relayed the plea agreement offer to petitioner, provided him with reasonable advice regarding that offer, and left to petitioner the final decision of whether to accept the offer. *In re Mario Solares*, No. 5-141840-9, at *2-10 (Record, Ex. I at 72-80). Based on that determination, the state court concluded that Brooks did not coerce petitioner into accepting the plea agreement offered by the District Attorney and therefore found that no prejudice could have resulted from Brooks's conduct during the plea-bargaining stage of petitioner's criminal proceeding. *Id.* at *10-12 (Record, Ex. I at 80-82). Moreover, and as noted by the state court,

---

[6] Even if Brooks had provided petitioner with inaccurate information, erroneous advice regarding the consequences of a guilty plea is insufficient to establish ineffective assistance; petitioner must establish a "'gross mischaracterization of the likely outcome' of a plea bargain 'combined with . . . erroneous advice on the probable effects of going to trial.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 868 (9th Cir. 2004) (citing *United States v. Keller*, 902 F.2d 1391, 1394 (9th Cir. 1990)).

14

petitioner's argument that Brooks inaccurately advised him that he was facing 25 to 100 years in prison, rather than 28 years to life, does not suggest with reasonable probability that petitioner would have elected to go to trial had Brooks told him the latter. *Id.* at *12 (Record, Ex. I at 82). When a state court has reasonably determined that no prejudice would result from counsel's performance, the habeas court is not required to assess counsel's performance. *Strickland*, 466 U.S. at 697; *Williams v. Calderon*, 52 F.3d 1465, 1470 n. 3 (9th Cir 1995); *Woodford*, 537 U.S. at 26-27 (deferring to state court's conclusion that defendant was not prejudiced by counsel's errors).

In sum, petitioner has not shown that the state court's rejection of his ineffective assistance claim was an unreasonable application of federal law. Petitioner established neither deficient performance by trial counsel, nor prejudice based upon her advice to accept the plea agreement offered by the District Attorney.

**IV. CONCLUSION**

Accordingly, petitioner has not met his burden to show that he is in custody in violation of the Constitution or laws or treaties of the United States, and his petition is hereby **DENIED**. A certificate of appealability will not issue. Reasonable jurists would not "find the [Court's] assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: January 30, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**